Cite as 2026 Ark. App. 138

# ARKANSAS COURT OF APPEALS
## DIVISIONS III & IV
### No. CV-24-572

| | |
|---|---|
| MATTHEW FRASER<br><br>APPELLANT<br><br><br>V.<br><br><br>CARROLL ELECTRIC COOPERATIVE CORPORATION<br><br>APPELLEE | Opinion Delivered February 25, 2026<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04CV-23-3081]<br><br><br>HONORABLE JOHN R. SCOTT, JUDGE<br><br><br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## WAYMOND M. BROWN, Judge

Appellant Matthew Fraser appeals the order of the Benton County Circuit Court dismissing his claim for a private nuisance against appellee Carroll Electric Cooperative Corporation (CECC) upon finding that the Arkansas Public Service Commission (PSC) has jurisdiction to hear the claim. The circuit court had previously granted CECC's motion to dismiss appellant's claim for trespass. Appellant argues on appeal that the circuit court erred by (1) finding that the existence of an easement in favor of CECC across a portion of appellant's property automatically foreclosed a claim of trespass without considering whether the conduct complained of fell within the terms of the easement or constituted an abuse of CECC's easement; (2) finding that a PSC order establishing the tariffs for street-lighting service provided by CECC preempts appellant's common-law rights

to seek redress for the maintenance of a private nuisance created and maintained by CECC on appellant's property; and (3) making dispositive rulings based on matters first raised during oral argument and without requiring CECC to put the motion in writing and without allowing appellant ten days to respond. We affirm in part and reverse and remand in part.

Appellant filed a complaint against CECC and Curtis Mincer and Denise Reed (neighbors) on November 7, 2023. The complaint alleged that a security light containing an LED fixture installed and maintained by CECC at the request of the neighbors near the corner of appellant's property line with the neighbors constituted a trespass and nuisance on his property because the bright light was offensive and interfered with appellant's use and enjoyment of his home and property.[1] According to the complaint, the offensive light shines directly into appellant's daughter's bedroom, interfering with her sleep and detracting from the comfortability of the room at night. Appellant noted that the light had been re-aimed, but he complained that while this reduced the direct light on his house, it caused the light from the LED to be brighter on the corner of appellant's property. Appellant alleged that it sought help from the Arkansas Natural Sky Association (ANSA), an environmental group that tries to help people with light-trespass problems. ANSA investigated appellant's situation and subsequently drafted a report stating that the lighting was excessive and constituted a private nuisance on appellant's property. It also suggested a proper way to

---

[1]Appellant's home is one of eighty-seven homes in the neighborhood. The home was purchased by appellant in September 2022, and the LED lighting existed at least three years before appellant's purchase.

address security concerns with lighting. CECC's attorney was provided with a copy of the report. Appellant sought injunctive relief, compensatory damages, and exemplary damages, jointly and severally, from the defendants.

CECC filed its answer to the complaint and a motion to dismiss appellant's complaint along with an accompanying brief pursuant to Ark. R. Civ. P. 12(b)(6) based on appellant's failure to state facts upon which relief could be granted on December 6, 2023. CECC also filed a counterclaim for prescriptive easement. Attached as exhibits to the counterclaim were a copy of its tariff regarding security lighting on file with the PSC and a copy of the easement granted to it by Cooper Communities, the developer of Bella Vista, the community in which appellant's house is located. CECC claimed in its motion to dismiss that appellant had failed to sufficiently allege causes of action for both the trespass and nuisance claims. Appellant responded to the motion to dismiss, disagreeing that he had failed to state facts upon which relief could be granted and discussing the law on trespass and nuisance.

Appellant filed an amended complaint on December 8, 2023. CECC filed its answer to the amended complaint and renewed its motion to dismiss on December 13. Appellant filed his second amended complaint on January 2, 2024, again alleging a trespass and nuisance claim against CECC relating to the light located on the easement on appellant's property. Appellant claimed the following damages: "injury to the use and enjoyment of his property"; that the "injury has been, and is, actual"; that said injury "is certain, substantial, and beyond speculation and conjecture"; and that the light "makes [appellant's] use and

3

enjoyment of his property much more difficult," "makes [appellant's] use and enjoyment of his property abusive to senses," and "includes increased health risks." Appellant sought injunctive relief and compensatory and exemplary damages. CECC filed its answer and its counterclaim for prescriptive easement; it also renewed its motion to dismiss.

A hearing took place on February 2, 2024. At that hearing, appellant stated that he had never claimed the light was the trespass but that the trespass was the box that controls the light and the lightbulb that was on appellant's property. He also stipulated at the hearing that CECC's light fixture and box were on its easement. CECC received a partial order of dismissal for the trespass claim, which was filed on February 12. The neighbors also obtained an order dismissing the complaint for both the trespass and nuisance claims against them, and the order was filed on February 15.

Appellant filed a motion and brief for permanent injunction on March 29 asking the circuit court to issue a permanent injunction requiring CECC to remove the light. CECC filed a response alleging that the circuit court was without jurisdiction to consider the complaint for injunctive relief and that appellant's motion was untimely since the case had not been tried on its merits. CECC stated that it had established a device around the light fixture that shielded appellant's property from most of the light emitted and focused the light away from appellant's property. CECC filed a motion to dismiss for lack of subject matter jurisdiction and accompanying brief on April 15 asking the circuit court to find that the PSC had primary and exclusive jurisdiction to hear the case. Appellant responded that (1) circuit courts are courts of general jurisdiction, (2) Ark. Code Ann. §§ 23-18-308 and 23-

4

2-304 did not provide jurisdiction to the PSC, (3) Ark. Code Ann. § 23-3-119 did not grant the PSC jurisdiction to hear common-law claims, (4) every case cited by CECC involved rates charged, and (5) CECC failed to cite the only controlling case on point, which he alleged was *Stanley v. Ozarks Electric Cooperative Corp.*.[2]

Appellant filed a motion and brief for bench trial on injunction and jury trial on damages on May 14. CECC filed a reply to appellant's response to its motion to dismiss on May 20, citing *Capps v. Carroll Electric Cooperative Corp.*,[3] and contending that because it did not address rates charged but rather alleged a tort, the case was still subject to PSC jurisdiction and not circuit court jurisdiction.

CECC's motion to dismiss was heard on May 20. At the hearing, appellant's attorney acknowledged that he had seen the *Capps* case and was ready to "argue that case." The circuit court granted CECC's motion to dismiss for lack of subject-matter jurisdiction and granted CECC's oral motion to dismiss its counterclaim. The day after the hearing, appellant filed a response to the CECC's oral motion to dismiss or, in the alternative, motion and brief for reconsideration. Appellant claimed that CECC had made an oral motion to dismiss at the hearing in addition to the written motion to dismiss that was being held that day. Appellant alleged that the circuit court had made a procedural and substantive error. He argued that he was entitled to an additional ten days to respond to the oral motion that CECC had made

---

[2]2019 Ark. App. 560, 591 S.W.3d 322.

[3]2011 Ark. 48, 378 S.W.3d 146.

5

at the hearing.  No order was entered regarding appellant's posthearing motion.  An order dismissing appellant's second amended complaint for lack of subject-matter jurisdiction was filed on May 24.  Appellant filed his notice of appeal on June 13 and his amended notice of appeal on July 24.

Appellant argues as his first point on appeal that the circuit court erred in finding that the existence of an easement in favor of CECC across a portion of appellant's property automatically foreclosed a claim of trespass without considering whether the conduct complained of fell within the terms of the easement or constituted an abuse of CECC's easement.  The circuit court granted CECC's motion to dismiss appellant's trespass claim against it.  CECC had sought dismissal under Arkansas Rule of Civil Procedure 12(b)(6).

The standard of review for granting a motion to dismiss is whether the circuit court abused its discretion.[4]  In making that determination, we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint.[5]  We construe the pleadings liberally and resolve all reasonable inferences in favor of the complaint.[6]  However, our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief.[7]  We treat only the facts

---

[4]*Blackburn v. Lonoke Cnty. Bd. of Election Comm'rs*, 2022 Ark. 176, at 5, 652 S.W.3d 574, 578–79.

[5]*Id.*

[6]*Id.*

[7]*Id.*

6

alleged in the complaint as true but not a plaintiff's theories, speculation, or statutory interpretation.[8] Arkansas's law of trespass requires a physical invasion of a plaintiff's real property that is caused by a defendant and results in damages.[9] Our courts have held that using an easement beyond its authorized scope constitutes trespass.[10] When a party uses an easement within its authorized scope, no trespass occurs.[11]

In his second amended complaint, appellant alleged that the light affixed to the pole owned by CECC and placed on its easement constituted a trespass because the light constituted a physical invasion of the property. However, at the hearing, appellant said he never claimed that the light was the trespass and instead argued that the box and the light bulbs were actually the cause for the trespass action because they are located on appellant's property. CECC stated—and appellant stipulated—that the box was located on the easement that CECC had on appellant's property. Evidence also showed that the easement was granted so that CECC could provide security lights to the subdivision in which appellant lives. That is exactly what CECC was doing. Accordingly, we should affirm the circuit court's dismissal of appellant's trespass action against CECC.

---

[8]*Id.*

[9]*Jewel Coal & Mining Co. v. Watson*, 176 Ark. 108, 2 S.W.2d 58 (1928).

[10]*Diamond K. Invs., Inc. v. 1330 LLC*, 2024 Ark. App. 433, 698 S.W.3d 653.

[11]*Wilson v. Brown*, 320 Ark. 240, 897 S.W.2d 546 (1995).

7

As his second point on appeal, appellant argues that the circuit court erred by finding that a PSC order establishing the tariffs for street-lighting service provided by CECC preempts appellant's common-law rights to seek redress for the maintenance of a private nuisance created and maintained by CECC on appellant's property. Subject-matter jurisdiction is the power of the court to hear and determine the subject matter in controversy between the parties.[12] An Arkansas court lacks subject-matter jurisdiction if it cannot hear a matter "under any circumstances" and is "wholly incompetent to grant the relief sought."[13] Circuit courts have original jurisdiction of "all justiciable matters not otherwise assigned pursuant to" the constitution.[14]

The PSC, on September 24, 2019, approved CECC's street-lighting service rate schedule. It covered outdoor lighting in all allocated territory, and it stated that the service is available to customers for outdoor lighting subject to the tariffs as approved by and filed with the PSC. As far as installation, it stated that the lighting unit would be furnished and installed on an existing CECC pole suitable to both the customer and CECC. It also stated that CECC would make all necessary electrical connections and furnish electricity to the unit. The lights were to be unshielded on wood poles with overhead brackets, and it specified

---

[12]*Perroni v. Sachar*, 2017 Ark. 59, 513 S.W.3d 239.

[13]*Edwards v. Edwards*, 2009 Ark. 580, at 4, 357 S.W.3d 445, 448 (quoting *J.W. Reynolds Lumber Co. v. Smackover State Bank*, 310 Ark. 342, 352–53, 836 S.W.2d 853, 858 (1992)).

[14]Ark. Const. amend. 80, § 6(A).

8

the lamp size and rates. Appellant, in his motion for injunctive relief, asked the circuit court to order CECC to remove the lighting located on its easement on appellant's property. In response, CECC argued that the circuit court did not have jurisdiction to hear this request or hear appellant's nuisance claim due to the tariff CECC had with PSC concerning the street lighting. The circuit court agreed.

The Arkansas General Assembly has explicitly limited the PSC's jurisdiction to public rights arising from public-utility statutes and the commission's lawful rules, regulations, and orders.[15] Arkansas Code Annotated section 23-3-119(f)(2) states that "[p]ublic rights which the commission may adjudicate are those arising from the public utility statutes enacted by the General Assembly and the lawful rules, regulations, and orders entered by the commission in the execution of the statutes." However, this statute provides that "[t]he commission's jurisdiction to adjudicate public rights does not and cannot, however, extend to disputes in which the right asserted is a private right found in the common law of contracts, torts, or property."[16] Appellant sued CECC for injunctive relief and damages for nuisance, which appellant alleges are private rights arising out of common law.

In *Stanley*,[17] the appellant landowners sued Ozarks Electric Cooperative Corporation for taking their property without just compensation and for increased interference with their land. They alleged that Ozark planned to install and operate a commercial fiber-optic

---

[15]Ark. Code Ann. § 23-3-119 (Repl. 2015).
[16]*See Capps, supra.*

[17]*Supra.*

9

communications network independent of the existing wires and cables for the transmission or distribution of electricity as allowed by Ozarks' utility and electrical easements on appellees' land. Ozarks moved to dismiss the action, claiming that the PSC had jurisdiction over the claims. The circuit court granted Ozarks' motion to dismiss for lack of jurisdiction. This court heard the appeal in 2020 and ultimately decided that appellants' dispute involved private-property rights, for which circuit courts maintain exclusive jurisdiction, not one involving public rights, for which the PSC would have jurisdiction. *Stanley* was reversed and remanded to the circuit court for further proceedings.

The *Stanley* precedent requires us to reverse and remand this case. Although CECC introduced its tariff with the PSC, that tariff did not set out the brightness of the lights, which was appellant's sole complaint. Appellant's complaint against CECC was private in nature and alleged interference with appellant's use and enjoyment of his land. There was no allegation that the public as a whole or even that other landowners in the neighborhood had the same problems with security lighting installed by CECC. We hold that the circuit court erred by finding that the PSC had exclusive jurisdiction over appellant's complaint against CECC. Therefore, we reverse and remand this issue to the circuit court for further proceedings.

Finally, appellant argues that the circuit court erred by making dispositive rulings based on matters first raised during oral argument and without requiring CECC to put the

motion in writing and without allowing appellant ten days to respond. Since we are reversing the court's dismissal of appellant's claim against CECC, we do not reach this argument because it will be moot. A case is moot when any judgment rendered would not have any practical legal effect upon a then existing legal controversy.[18]

Affirmed in part; reversed and remanded in part.

TUCKER, THYER, and WOOD, JJ., agree.

HARRISON and HIXSON, JJ., dissent.

**KENNETH S. HIXSON, Judge, dissenting**. I dissent from the majority's decision to reverse the dismissal of Fraser's nuisance claim because I believe the majority erroneously concluded that this dispute involved a private right to be decided in the circuit court.[1] In my view, Fraser's nuisance action, which is premised on the brightness and location of a streetlight, is a matter that involves public rights that the Arkansas Public Service Commission (PSC) is charged by law to administer. And further, I believe the majority's reliance on *Stanley v. Ozarks Electric Cooperative*, 2019 Ark. App. 560, 591 S.W.3d 322, is misplaced. Therefore, I would affirm both of the circuit court's orders of dismissal.

According to Fraser's amended complaint, his Bella Vista neighborhood has eighty-seven houses and seven light poles with light-emitting diode (LED) lights installed throughout the length of its wooded winding main road. The light on the utility pole on

---

[18]*Terry v. White*, 374 Ark. 387, 288 S.W.3d 199 (2008).

[1]I agree with the majority's decision to affirm the dismissal of Fraser's trespass claim for the reasons stated in the majority opinion.

the front right area of what is now Fraser's property was originally a high-pressure sodium (HPS) light that was installed for the safety of the neighborhood or public in 2007. HPS lights were discontinued, and in 2018, the HPS light was replaced with a modern regulatory-compliant LED fixture at the request of two members of the neighborhood, Mincer and Reed. After Fraser purchased his residence four years later in 2022, his complaints began that the new compliant light was too bright. Fraser subsequently alleged in his amended complaint that the brightness of the LED bulb casts "unattractive shadows" on the corner of his property and therefore constituted a nuisance.[2] The issue is whether Fraser's cause of action for nuisance is a private claim within the jurisdiction of the circuit court or one involving public rights within the jurisdiction of the PSC pursuant to its rules, regulations, and tariffs. I would affirm the circuit court's dismissal of Fraser's nuisance claim based on its finding that original jurisdiction of the claim is with the PSC.

Fraser and the majority rely on this court's decision in *Stanley*, *supra*, as authority that Fraser's nuisance claim asserts a private right over which the circuit court has jurisdiction. However, I believe *Stanley* is distinguishable and does not compel such a result.

In *Stanley*, we were dealing with the new Broadband Over Power Lines Enabling Act. The goal of the Act was to spread broadband internet coverage throughout rural counties in Arkansas. According to the Act, a utility company could use its existing electrical-line easements to install the new fiber optic cable. If the new *additional* fiber optic cable

---

[2]Fraser also alleged a trespass, which I agree was properly dismissed for failure to state facts and will not be discussed further herein.

installations caused an *additional burden* on the landowner, then the landowner could file a claim for damages for the *additional burden* with their easements. *See* Ark. Code Ann. § 18-15-507(a)(2). The additional burden (or loss of use) if any, is referred to as "increased interference" with the use of the landowner's property, and this statutory phrase is used throughout the *Stanley* opinion.

The *Stanley* plaintiffs were property owners whose properties were encumbered by Ozarks Electric easements for power lines. Ozarks wanted to install new fiber optic broadband internet lines within the existing power-line easements.

The *Stanley* plaintiffs alleged they suffered two types of damages: (1) loss of use and loss of privacy to the *land adjacent* to the easements for which no compensation was offered and (2) damages to the *land within* the existing easements due to the *increased interference* with their use of the land without just compensation. The first claim was not a claim of inverse condemnation but was more akin to trespass and ordinary damage to private property caused during construction on property outside the easement. The second claim alleged damage to the property *within the easement* for *increased interference* with their use of the land. This second claim could be viewed as inverse condemnation because the utility company was expanding the scope of its permitted activity within the existing easement from just installing electric lines to installing electric lines *plus* new fiber optic lines without additional just compensation. In essence, the *Stanley* plaintiffs argued that if the utility company increased the scope of its easement from electric lines to electric lines *plus* fiber optic lines, such an expansion constituted an unconstitutional taking, and plaintiffs were entitled to additional

13

just compensation. The circuit court in *Stanley* found that the topic of increased interference was more appropriately within the jurisdiction of the PSC and dismissed the complaint. The majority in *Stanley* reversed the circuit court's dismissal of the complaint and held that this increased interference and construction damage was a private cause of action properly within the purview of the circuit court and not the PSC.

The *Stanley* majority correctly pointed out that the PSC has "the authority to adjudicate individual disputes between consumers and the public utilities which serve them when those disputes involve *public rights*," which the commission is charged to administer. *Stanley*, 2019 Ark. App. 560, at 6, 591 S.W.3d at 325 (quoting Ark. Code Ann. § 23-3-119(f)(1)) (emphasis added). However, the rules also provide, "The commission's jurisdiction to adjudicate public rights does not and cannot, however, extend to disputes in which the right asserted is a *private right* found in the common law of contracts, torts, or property." Ark. Code Ann. § 23-3-119(f)(2) (emphasis added). The *Stanley* majority concluded:

> Circuit courts have original jurisdiction of "all justiciable matters not otherwise assigned pursuant to" the constitution. Ark. Const. amend. 80, § 6(A). Generally, condemnation proceedings are within the exclusive jurisdiction of the circuit court. *Ark. Power & Light Co. v. Potlatch Forest, Inc.*, 288 Ark. 525, 707 S.W.2d 317 (1986).
>
> The particular claims raised by these appellants *do not involve public rights or the provision of broadband services*. The complaint identifies appellants as landowners, not consumers of the utility company. *The gist of their complaint is a taking of private property without just compensation.* Appellants do not dispute that Ozarks Electric has a right to use its own existing lines to transmit broadband services. Appellants' issue is with Ozarks Electric's entry onto their land to install completely new lines for broadband services without just compensation or an assessment of damages for the increased interference. *Because the circuit court has exclusive, original jurisdiction to adjudicate a*

14

*dispute involving private-property rights and damages for inverse condemnation and increased interference, we reverse and remand to the circuit court for further proceedings.*

*Stanley*, 2019 Ark. App. 560, at 7, 591 S.W.3d at 325–26 (emphasis added).

Notably, the claims and issues in *Stanley*, which this court held to be within the circuit court's jurisdiction, were readily capable of resolution by a judge or jury and did not require expert testimony or opinions, i.e.: Can a utility company damage the area around the easement during construction without paying damages? And, does one more cable strung within the existing easement additionally interfere with the landowner's use and enjoyment of his property? And if so, the landowner is entitled to some additional compensation.

In my view, *Stanley* is easily distinguishable from the present case. In the present case, the issue of the luminosity or intensity of a security streetlight requires expert testimony regarding lighting, engineering standards, traffic safety, public safety, and environmental concerns, among other considerations that should be determined by the agency with the expertise—the PSC. This is highlighted by the fact that Fraser submitted the following voluminous exhibits in support of his nuisance claim:

1. Affidavit of the chairman of the Arkansas Natural Sky Association and an accompanying twenty-four-page manual on light pollution and light trespass and the legal standards.

2. Executive summary of report to the Council on Science and Public Health consisting of twenty-five pages and 134 footnotes.

3. Document submitted by the subcommittee of the Illuminating Engineering Society (IESNA) Roadway Lights Commission titled "Light Trespass – Research, Rights and Recommendations" consisting of more than twenty pages.

15

4. IESNA publication titled "Lighting Practices: Environmental Considerations for Outdoor Lighting" consisting of more than twenty pages.

5. Manual from the Lighting Library styled "Lighting: Engineering Standards."

6. IESNA sixty-nine-page manual styled "Guidance for Security Lights."

7. Forty-two-page document by the IESNA styled "Sustaining Lighting."

8. Document by the IESNA styled "Lighting of Roadways."

9. Chapter 6 of the Federal Highway Administration Handbook concerning lighting and its effects on animals, insects, juvenile salmon, and photosynthesis.

As can be readily seen, the circuit court was overwhelmed with scientific and industry data concerning industry standards, environmental concerns, safety standards, etc., concerning roadway lighting. The literature relied on by Fraser even included chapter 6 of the Federal Highway Administration Handbook concerning *lighting and its effects on animals, insects, juvenile salmon, and photosynthesis*. This is beyond the practical capability or purview of a judge or jury, and the circuit court correctly found that this type of issue regarding an alleged light nuisance, which caused "unattractive shadows" on Fraser's property, requires scientific examination and is best determined by the state agency designed to monitor the public outdoor lighting industry—the PSC. Otherwise, one streetlight on a street could be deemed a nuisance and the next streetlight not a nuisance. This could be county by county, city by city, or block by block, resulting in a patchwork of unworkable standards.

16

The circuit court noted in its order that in docket number 87-159-U, order number 66, the PSC approved a tariff that, among other things, addressed the availability of street-lighting service, the matter of the installation of equipment for such street-lighting service, and certain special conditions addressing the street-lighting service provided by appellee Carroll Electric (CECC). The tariff is specifically tailored toward street-lighting services and addresses an electric utility's responsibilities regarding installation, maintenance, lamp sizes and the corresponding rates, and shielding options. The circuit court—correctly, I believe—found that the tariff has the effect of vesting subject-matter jurisdiction over this cause in the PSC and not the circuit court.

I would suggest that *Stanley* should not be universally applied and is not dispositive in all cases requiring a determination of PSC versus circuit court jurisdiction and that each case must instead be decided on its own facts. The principle in *Stanley* is, in my view, not precedent for reversing in the present case. In *Stanley*, a judge or jury could assess whether one more cable or line within an easement constituted an increased interference with a landowner's property and, if so, award additional damages. Here, a judge or jury cannot conceivably determine whether public safety lighting installed by CECC violates industry standards or state or local regulations or whether it is unreasonable.

I would affirm the circuit court's dismissal of Fraser's cause of action for nuisance because the circuit court rightly found original jurisdiction of that claim to be within the expertise and jurisdiction of the PSC. If, after exercising its jurisdiction, the PSC determined that CECC created a nuisance, Fraser could then return to circuit court and request that a

17

judge or jury award damages. *See* Ark. Code Ann. § 23-3-119(d) ("The jurisdiction of the commission in such disputes is primary and shall be exhausted before a court of law or equity may assume jurisdiction. However, the commission shall not have the authority to order payment of damages or to adjudicate disputes in which the right asserted is a private right found in the common law of contracts, torts, or property.").

Perhaps a shoutout for all Arkansas residents and utilities should be issued: if an otherwise lawfully located and regulatory-compliant streetlight casts unattractive shadows over a corner of your property, run to the local circuit court. Who knows?

For these reasons, I would affirm the circuit court's dismissal of Fraser's nuisance claim and allow the PSC to assume jurisdiction to resolve the lighting dispute. And, if necessary, return the case to the circuit court for a determination of damages.

HARRISON, J., joins in this dissent.

*Ken Swindle*, for appellant.

*Everett Law Firm*, by: *John Everett*; and *Linda Lamb*, CECC In-House Counsel, for appellee.